DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**NEIL BROWN,**
Petitioner,

v.

**ESTHER MITTELMAN,**
Respondent.

No. 4D14-1748

[August 27, 2014]

Petition for writ of certiorari to the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. 12-22043 (12).

Sanford R. Topkin of Topkin & Partlow, P.L., Deerfield Beach, for petitioner.

Warren Kwavnick of Cooney Trybus Kwavnick Peets, Fort Lauderdale, for respondent.

PER CURIAM.

Non-party, Dr. Neil Brown, petitions this court for a writ of certiorari to quash a discovery order denying his objections to a subpoena duces tecum. Because Florida Rule of Civil Procedure 1.280(b)(5) does not apply to the requested discovery, and because "[a] law firm's financial relationship with a doctor is discoverable on the issue of bias," we deny the petition. *See Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay*, 133 So. 3d 1178, 1178 (Fla. 4th DCA 2014).

The underlying litigation is a negligence action arising from an automobile accident. The plaintiff's attorney, Cindy Goldstein, referred the plaintiff to Dr. Brown, who treated the plaintiff under a letter of protection ("LOP") agreement. The law firm of Lytal, Reiter, Smith, Ivey & Fronrath, LLP ("Lytal Reiter") joined as Ms. Goldstein's co-counsel. Defendant/respondent subsequently subpoenaed the person with the most billing knowledge at Dr. Brown's office to produce documents regarding patients previously represented by both law firms, LOP cases, and referrals from the plaintiff's attorneys. The trial court overruled Dr.

Brown's objections to the subpoena and compelled discovery of the requested documents. Dr. Brown now petitions this court to quash the discovery order, arguing that rule 1.280(b)(5) prohibits this discovery and that his relationship with Lytal Reiter is not discoverable because there is no evidence that the firm directly referred the plaintiff to Dr. Brown.

A party may attack the credibility of a witness by exposing a potential bias. § 90.608(2), Fla. Stat. (2009). The financial relationship between the treating doctor and the plaintiff's attorneys in present and past cases creates the potential for bias and discovery of such a relationship is permissible. *See Morgan, Colling & Gilbert, P.A. v. Pope*, 798 So. 2d 1, 3 (Fla. 2d DCA 2001); *Springer v. West*, 769 So. 2d 1068, 1069 (Fla. 5th DCA 2000). A physician may derive substantial income from treating patients involved in litigation beyond the provision of services as a retained expert. A jury is entitled to know the extent of the relationship between the treating doctor and the referring law firm. *See Allstate Ins. Co. v. Boecher*, 733 So. 2d 993, 997 (Fla. 1999) ("The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing.").

The discovery available under rule 1.280(b)(5) does not compel full disclosure of a treating physician's potential bias. The rule limits discovery to "[a]n approximation of the portion of the expert's involvement *as an expert witness*" based on data such as the "percentage of earned income derived from *serving as an expert witness*." Fla. R. Civ. P. 1.280(b)(A)(5)(iii)4. (emphasis added). A physician's continued financial interest in treating other patients referred by a particular law firm could conceivably be a source of bias "not immediately apparent to a jury." *Morgan*, 798 So. 2d at 3. Rule 1.280(b)(5) neither addresses nor circumscribes discovery of this financial relationship.

Whether the law firm directly referred the plaintiff to the treating physician does not determine whether discovery of the doctor/law firm relationship is allowed. In *Katzman v. Rediron Fabrication, Inc.*, 76 So. 3d 1060, 1064 (Fla. 4th DCA 2011), we recognized a "direct referral by the lawyer to the doctor" as one circumstance that creates a potential for bias. However, contrary to Dr. Brown's assertion, we did not intend to limit discovery to that narrow situation.[1] *See, e.g., Pack v. Geico Gen. Ins. Co.*,

---

[1]    We clarify dicta in prior opinions perceived as suggesting the contrary. In *Katzman v. Ranjana Corp.*, 90 So. 3d 873, 876–79 (Fla. 4th DCA 2012), we merely remanded for the trial court to consider our revised opinion on rehearing in

119 So. 3d 1284 (Fla. 4th DCA 2013) (recognizing that the potential bias arising from a letter of protection exists independent of any referral relationship). A doctor's referral arrangements with a law firm in other cases is a proper source for impeachment. *Flores v. Miami-Dade Cnty.*, 787 So. 2d 955, 958–59 (Fla. 3d DCA 2001). Thus, the fact that Lytal Reiter did not directly refer the plaintiff to Dr. Brown makes no difference.

Similar to the protections afforded to retained experts under rule 1.280(b), we have recognized that a treating physician witness should be protected from overly-intrusive financial discovery. *Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co.*, 103 So. 3d 200, 203–04 (Fla. 4th DCA 2012). Trial courts have broad discretion to balance the interests involved and generally should not permit extensive discovery of a treating physician's finances. *See Syken v. Elkins*, 644 So. 2d 539, 544–45 (Fla. 3d DCA 1994), *approved*, 672 So. 2d 517 (Fla. 1996). Such overly-intrusive discovery creates a "chilling effect" on the availability of experts willing to serve as witnesses in litigation, *id.* at 547, and could similarly chill the willingness of doctors to treat patients involved in litigation. This does not mean that all relationships between law firms and treating doctors can be kept hidden from scrutiny. In cases where there is evidence of a referral relationship, more extensive financial discovery may be appropriate from both the law firm and the doctor. *See Steinger, Iscoe & Greene, P.A.*, 103 So. 3d at 206.

Respondent is not asking for broad financial discovery. The discovery seeks to uncover an ongoing relationship between Dr. Brown and the plaintiff's lawyers that might bias the doctor to provide favorable testimony for the plaintiff. The discovery is limited to a reasonable time frame and is not overly-intrusive. Thus, the trial court did not depart from the essential requirements of the law in overruling Dr. Brown's objections.

We again emphasize that the rule limiting financial discovery from retained experts cannot be used to hide relevant information regarding a treating physician's possible bias or the reasonableness of the charges at issue in the litigation. *See Rediron Fabrication, Inc.*, 76 So. 3d at 1064. Limiting this discovery has "the potential for undermining the truth-seeking function and fairness of the trial." *Boecher*, 733 So. 2d at 998. As the Second District concluded in a similar case involving discovery of the relationship between an expert and a law firm, "rather than departing from the essential requirements of the law, the circuit court's order conforms to the trend insuring fairness in the jury trial process by

---

*Rediron Fabrication, Inc.* We did not restrict discovery to the specific circumstances of *Rediron Fabrication, Inc.*

permitting discovery of a financial relationship between a witness and a party or representative." *Morgan, Colling & Gilbert, P.A.*, 798 So. 2d at 3.

Trial courts have broad discretion in controlling discovery and protecting the parties that come before it. We generally will not exercise our certiorari jurisdiction to interfere with that discretion and find no compelling reason to do so here.

*Petition Denied.*

DAMOORGIAN, C.J., WARNER and TAYLOR, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

4